**Robert E. Franz, Jr.    OSB #730915**
E-Mail: rfranz@franzlaw.comcastbiz.net
LAW OFFICE OF ROBERT E. FRANZ, JR.
P.O. Box 62
Springfield, OR  97477
Telephone: (541) 741-8220
Facsimile: (541) 741-8234
   Of Attorneys for Defendants Will Stutesman,
Officer Grose, Officer Pieske, Sgt. McAlpine,
and the City of Eugene.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **RONDA MCGOWAN**, Personal Representative for the Estate of Brian Babb, **LEE BABB**, **CONNOR BABB**, by and through his Guardian Ad Litem, **STEPHANIE WOODCOCK**, and **KAYLEE BABB**,<br><br>            Plaintiffs,<br><br>      vs.<br><br>**WILL STUTESMAN**, **OFFICER GROSE**, **OFFICER PIESKE**, **SGT. MCALPINE**, **CITY OF EUGENE,** a municipal subdivision of the State of Oregon, **JANE DOE CALL TAKER**, and John and Jane Does 1-10.<br><br>            Defendants. | Case No.  6:17-cv-00424-TC<br><br>**Declaration of**<br>Will Stutesman |

Page 1 – Declaration of Will Stutesman.

I, Will Stutesman, under penalty of perjury do hereby declare as follows:

I am 37 years of age, and I make this declaration based on my personal knowledge of the facts contained herein.

I am one of the individually named defendants in the above-captioned case. I am currently a Police Officer in the patrol division of the Eugene Police Department, having been hired by the City of Eugene on August 17, 2009. My law enforcement career began in July 2006, at which time I was hired by the Lane County Sheriff's Office as a Corrections Officer. While at Lane County, I obtained a Basic Certificate as a Certified Corrections Officer that was issued by the Department of Public Safety Standards and Training of the State of Oregon (DPSST), after I attended the Oregon Public Safety Academy. I also served as a volunteer firefighter for the Dexter Rural Fire Department from January 2005 to March 2007.

After I was hired by the City of Eugene, I again attended the Oregon Public Safety Academy, at which time I obtained a Basic Certificate as a Certified Police Officer. I then returned to Eugene, and received approximately 20 weeks of training by several Eugene Police Department Field Training Officers. I am also a member of the Eugene Police SWAT team, which I joined in March of 2014. In addition to my ongoing training I receive as a Police Officer, I also receive additional training as a SWAT team member, approximately twice a month for approximately 20 hours per month. See Exhibits 101 and 102 which are true and correct copies of some of the training records showing the training I have received from the City of Eugene and the Department of Public Safety Standards and Training of the State of Oregon.

During my career with the City of Eugene, I have been very well trained as a police officer in all areas of law enforcement, including the areas of the use of force, firearms, and defensive tactics.

Page 2 – Declaration of Will Stutesman.

The Eugene Police Department has promulgated various written policies and procedures. These procedures include the use of force. Prior to March of 2015, I had read those polices and understood them. During my time as a Police Officer and prior to March of 2015, I have received excellent training and supervision by the Eugene Police Department and the DPSST, and none of this training and supervision has been inadequate.

In March of 2015, my radio call sign was 3E56. (Normally called: "3 Edward 56"). On Monday, March 30, 2015, I was working my normal shift as a police officer, which was from 11:00 a.m. to 9:00 p.m.

Attached to this motion for summary judgment is Exhibit 103. This is a true and correct copy of the recording of the information that was supplied to me and the other officers in this incident from dispatch and other radio traffic. I was able to hear the information set forth in Exhibit 103, whether it was dispatch talking or another officer talking on the radio. I relied upon the information provided to me in Exhibit 103.

Around 5:07 p.m. dispatch radio log time (See Exhibit 123 at 3), I was sitting in my patrol car at the Eugene Police Evidence Control Unit writing a police report. At that time, I heard dispatch request that available police officers respond to 2248 Devos "for a suicidal subject telling his therapist that he is armed with a 9-millimeter to his head." (Exhibit 103-Live Radio Dispatch)

I immediately responded and started to drive to 2248 Devos. While enroute dispatch advised the responding officers:

> "We have the therapist on the line. They are talking to Brian Babb. Born in '65. He is a veteran with PTSD. Sounds intoxicated and may be on pain meds. States he has a 9-millimeter to his head and has already shot one bullet into a window or somewhere in the house." (Exhibit 103-Live Radio Dispatch)

Page 3 – Declaration of Will Stutesman.

As I continued driving my patrol car towards the scene, dispatch advised: "We do have a local on Brian. He has a previous arrest for DUII in '09." (Exhibit 103-Live Radio Dispatch)

I continued driving my patrol car towards the scene along with the other additional police units responding to the call. At that time, Eugene Police Sergeant Malcolm McAlpine asked the dispatcher "Can we find out if the complainant heard a shot go off." (Exhibit 103-Live Radio Dispatch). The dispatcher responded: "She did not hear the shot. That is the information he provided her." (Exhibit 103-Live Radio Dispatch)

The dispatcher then advised all units:

"Brian is a 49-year-old white male, five nine, 160, brown and hazel. He may have a roommate that is there, but the caller has not heard the roommate in the background." (Exhibit 103-Live Radio Dispatch)

At approximately 5:13 p.m. dispatch time (Exhibit 123 at 3), I arrived near the scene, and I parked my patrol vehicle on Cody Street, east of the intersection of Cody Avenue and Blue Heron Lane, and southeast of the 2248 Devos address. Officer Derek Dewitt arrived at about the same time, and parked his patrol vehicle right behind my patrol vehicle on Cody Avenue.

Attached hereto as Exhibit 108 is the in-car video of the patrol car that was driven by Officer DeWitt. This video has sound. There is a time stamp on the video, but this will not be the real time as the in-car videos of the patrol cars are not synchronized to each other or the actual time. For purposes of reference to Exhibit 108, the elapsed time on the video will be used, instead of the time stamp.

When DeWitt left his patrol car, he left his in-car video on. DeWitt also has a microphone on him. So depending on the coverage, if the microphone carried by DeWitt picks up conversations or noises, those conversations and noises will be

Page 4 – Declaration of Will Stutesman.

transmitted to DeWitt's in-car video, and a person can hear the conversations and noises when the video is played.

After parking my patrol car, I got my gear out of the trunk of my patrol car, including a long rifle, and DeWitt and myself started walking towards 2248 Devos. I was in my full police officer uniform as shown on Exhibit 107. If one looks at Exhibit 108, at elapsed time 6:23, one can see me getting my gear out of the trunk of my patrol car. At elapsed time 9:16, one can see me and DeWitt walking from our patrol cars to 2248 Devos. DeWitt's call sign is 3E45.

Around this time, dispatch advised us: "The therapist does not know the name of the roommate, and we have no associations other than Brian for this address." (Exhibit 103)

Also, while Dewitt and myself were walking to the scene, Officer Joseph Kidd advised us over dispatch; "I see two white pickup trucks in the driveway. One is a Toyota Tacoma. I can't see the plate. The other one is a full-sized Ford pickup. I will try and get the plates." (Exhibit 103)

Officer Kidd then got the license plate to the Ford and dispatch advised: "The Ford is registered to the involved, Brian Babb." (Exhibit 103)

Officer Kidd then asked if anyone was getting the Bearcat and he noted: "Approach to the front is difficult. It is a two-story house. Windows upstairs are open. They look out onto the street and driveway." (Exhibit 103) Sergeant McAlpine then advised that he would get someone to bring the Bearcat. (Exhibit 103).

Officer Kidd gave us a location and description of the Babb house; and then later advised us: "The neighbor said the involved has a history of alcohol abuse." (Exhibit 103). Officer Kidd also advised us that he was at the driveway of the neighbor's house, located to the south of the driveway to the Babb house (Exhibit 103) Officer DeWitt and I then met with Officer Kidd in the driveway of the

Page 5 – Declaration of Will Stutesman.

neighbor's house.  The address of the neighbor's house was 2244 Devos Street.  Sergeant McAlpine then joined us, and took a roll call of the location of all of the officers.  (Exhibit 103)

Exhibit 104 is an aerial view of the scene from Google.  The photo is not the date of the incident, but it gives an idea of location of the houses.  2248 Devos is marked on Exhibit 104.  2248 Devos was the house Mr. Babb was in at the time of the incident.

At this time, we were standing in the driveway of the house located at 2244 Devos Street.  Exhibit 105A and 105B show the view we had from the driveway of the neighbor's house.  Again, exhibits 105A and 105B are not photos taken on the day of the incident.  They are from Google.

As we are waiting for the Bearcat to arrive at the scene, dispatch advises us that the counselor talking to Mr. Babb has an open line with him.  Sergeant McAlpine tells dispatch: "If she has an open line and thinks that she might have rapport with him, if she could ask him to step outside with nothing in his hands, that would be fantastic."  (Exhibit 103)

Dispatch responded:  "She is just advising that he says he has a round loaded in the chamber and that it is ready to go." (Exhibit 103)

McAlpine then responded:  "If she could also find out where in the house.  We would like him to come out the front door, and we will address him there." (Exhibit 103)

The Bearcat arrives thereafter.  The Bearcat was positioned in part of the driveway of the neighbor's house, located at 2244 Devos, and it was pointed at the Babb residence.  I then get inside the turret located inside the Bearcat.  Officer Pieske drove the Bearcat to the scene and he remained in the driver's seat.  Officer Grose is in the passenger seat. Sergeant McAlpine, and Officer DeWitt are in or by the back of the Bearcat.

Page 6 – Declaration of Will Stutesman.

The Bearcat video is attached at Exhibit 106.  There is no sound on the Bearcat video itself.  There is a timestamp on the video.  Again, this is not the actual time; rather it is an estimated time.  The camera on the Bearcat is located inside the Bearcat. For purposes of this declaration, I will use elapsed times on the Bearcat video.

From my position standing up in the turret, I could see about the top half of the front door to the house, from about the door handle up.  I was standing up inside the turret with the lid of the turret up: and my upper body was in such a position that I was able out to give commands to the house if need be, and I was able to aim my long rifle at the front door.  A portion of my face was exposed to the front door and portions of the front of the house.

Once the Bearcat was in position, Sergeant McAlpine advised dispatch and the officers listening: "We have positioned the Bearcat, and we're going to start hails here in a second."  The radio log (Exhibit 123 at 2) indicates that this transmission by McAlpine took place at 5:37 p.m.

Officer Matthew Grose was the person that was going to address Mr. Babb over the loud speaker.

While I was in the Bearcat, we were advised by dispatch that the owner of the white Tacoma that was also in the driveway of the Babb residence was Mr. Antonini:

"2015 Toyota Tacoma registered to last of Antonini, first of James Robert, … with an address of 5941 Avalon." (Exhibit 103)

Portions of the incident can be seen and heard by combining a viewing of the Bearcat video (Exhibit 106) with the sound coming from the in-car video of the patrol car of Officer DeWitt (Exhibit 108).  That is, watching the Bearcat video (Exhibit 106) and playing the in-car video of Officer DeWitt (Exhibit 108) at the same time can give one a good idea of what was heard and seen by me.

Page 7 – Declaration of Will Stutesman.

For example, one can hear Officer Grose starts his loud speaker calls to Mr. Babb on Exhibit 108 at elapse time 33:43. The first series of calling out to Mr. Babb goes from elapse time 33:43 to elapse time 35:44. During this period of time, one can hear Officer Grose saying: "Brian. 2248 Devos. This is the Eugene Police Department. We want to make sure everyone is safe today and nobody gets hurt. In order for that to happen we need you to come outside with your hands empty and in the air."

One can also hear: "Brian. This is the Eugene Police Department. I need you to come outside with your hands empty so we can talk to you and help you out today."

And one can hear: "Eugene Police Department. We don't want anybody to get hurt today."

At elapse time 35:43 one can hear: "Hands in the Air." This is when the roommate comes out of the house. One can then hear discussions about bringing the roommate to the back of the Bearcat. I remember that as the roommate was coming to the Bearcat, but before he got to the Bearcat, the roommate was saying: "He is going for his guns, he is going for his guns."

Now up to this point in time, a couple of things happen that will tie in when the roommate comes out. On the Bearcat video (Exhibit 106), at elapsed time 5:43, the front door of the house opens up. It then closes at elapsed time 5:49. This is when Mr. Babb came to the door, opened the door, yelled something at us, and then closed the door. At that time, he did not have anything in his hands, nor was he holding or pointing any weapons. This incident was at 5:43 pm according to dispatch radio log (Exhibit 123) This incident was recorded by dispatch as follows as reported by Officer Kidd:

Page 8 – Declaration of Will Stutesman.

> "He is at the door. He is saying that - - challenging us to not fuck with him. He's closed the door. He's back inside. He is heavy build, blue sweatshirt, light-colored shorts." (Exhibit 103)

Then at elapsed time 6:03 on Bearcat video, one can see the blinds on the window to the upstairs bedroom on the left of the house come up half-way. The blinds then stay half-open.

Then at elapsed time 6:39 on the Bearcat video, the front door to the house opens up. This is when the roommate comes out of the house. The roommate comes into the view of the Bearcat video at elapse time of 7:11. The roommate coming out was recorded over dispatch by Officer Kidd as follows: "

> "He is at the door. Hands are up. Stand by. He's waving his hand. I am not sure it is the same person. Got a white male at the door with his hands up, blue sweatshirt, blue shorts, coming out. He is not Brian. It is Jim . . . Jim is coming out with his hands up. He is saying he is here to try and help Brian. The friend, Jim, is coming out the driveway. Front door is still open." (Exhibit 103)

Then Sergeant McAlpine reports over the radio: "We are with the friend now."

Then I respond over the radio: "That the involved is going for the guns in his safe.… Slammed the front door again."

Officer Kidd then reported over the radio that "Brian, the subject, said, "Fuck you" several times. He slammed the door now." (Exhibit 103)

The front door stayed open for about 65 seconds. It was closed by Brian Babb. Again, when Mr. Babb came to the door and shouted at us from the front door for the second time, he did not have anything in his hands, nor was he holding or pointing any weapons.

Page 9 – Declaration of Will Stutesman.

In addition, one can see the roommate came out with his hands in the air, with nothing in his hands, and he was safely talked back to the Bearcat. Had Mr. Babb come out the front door with hands up and empty, he would have been safely directed to the back of the Bearcat where the matter would have been resolved.

The roommate is then interviewed by the back of the Bearcat. I could hear the roommate say that Mr. Babb had numerous rifles in the house. Sergeant Vinje then reports over the radio, which can be heard on the dispatch recording as follows: "We have the subject in the house out. He is advising Brian is going for his guns in his safe right now." (Exhibit 103)

Sergeant McAlpine later advises over the radio which can be heard on the dispatch tape: "Be advised he has got access to a plethora of weapons including rifles." (Exhibit 103)

Once the roommate is at the back of the Bearcat, Officer Grose starts again to call out to Mr. Babb over the load-speaker. This can be heard on Exhibit 108 at elapsed time 36:52. Again, one can hear:

> "Brian. This is the Eugene Police Department. We're outside..we want to help you out."

> "Hey Brian. We want to help you out. We want to talk. That is why we are here. Come outside so we can talk so we can help you."

> "Brian. My name is Matt. I am with the Eugene Police Department."

> "We don't want to hurt you. We don't want you to hurt yourself.…
> Come outside, with your hands empty and in the air. We can work this out."

The calling out to Mr. Babb goes on until it stops at elapse time 38:51

While Grose is calling out to Mr. Babb, information is coming over the radio from the interview of the roommate. The following can be heard on the dispatch tape when Officer Farley asks Officer DeWitt: "DeWitt, can you confirm if he has

Page 10 – Declaration of Will Stutesman.

long guns as well." (Exhibit 103) Officer DeWitt responds over the radio: "Affirm."

As I was standing in the turret with my long rifle pointed towards the front of the house, I see that the front door to the house is open. On the Bearcat video, one can see the door open up at elapsed time 15:37.

I don't remember seeing the door open up. And I don't recall seeing the rifle being raised to a firing position. What I recall is that all of a sudden I see Brian Babb standing in the door way of the front door with a rifle already raised to the firing position with the butt of the rifle to his shoulder. The rifle is in the firing position, pointed right at me and in my direction. It was a large black rifle. I could see the hole in the barrel of the gun. I could see the rifle had a scope on it. I cannot remember if Mr. Babb was looking through the scope. I remember having the impression that the rifle was covering part of his face. It looked like Mr. Babb's body was taking up the doorway.

At that point, I thought Brian Babb was going to shoot me, and then he was going to start shooting everybody else. Since I could see him, he could see me. I immediately and instinctively reacted as trained by yelling: "Drop it. Drop it." The rifle stayed aimed right towards me, so I fired one shot. I could not tell if the shot hit Mr. Babb, but he immediately went down, out of my view. From the time I saw Mr. Babb in the door with the rifle pointed at me to the time of my shot, just seconds passed. No one directed me to shoot Mr. Babb. I made the decision based upon the situation facing me at the time.

If one listens to the in-car video of DeWitt (Exhibit 108), at elapse time 44:44, one can hear me yelling "Drop it. Drop it." Then one can hear the shot I fired. Dispatch radio log (Exhibit 123) reports shot fired at 5:52 pm.

Page 11 – Declaration of Will Stutesman.

After I fired one round, there was some confusion as to who fired the shot. Officer Kidd then can be heard over dispatch asking me if I saw what Mr. Babb had in his hands.:

Officer Kidd: "Stutesman, could you see what he had in his hands.

Stutesman: "It was a long gun pointed at me." (Exhibit 103)

After I fired one round at Mr. Babb, I stayed in the Bearcat until a decision was made on what to do next.  Exhibit 105 C shows the approximate location of the Bearcat with the approximate location of the various officers at the time the shot was fired.  I felt that the bullet had hit Mr. Babb, but I was not sure.  It was then decided to approach the house in the Bearcat for safety reasons.  So the Bearcat was moved to the front door.  On the video from the Bearcat video (Exhibit 106), at elapse time 20:40, one can see the Bearcat being driven through the fences up to the front door.  As the Bearcat is getting to the front door, at elapse time 21:40, one can see the rifle that Mr. Babb pointed at me on the cement platform in front of the threshold to the door.  One can also see Mr. Babb.

A close up photograph of the rifle that Mr. Babb pointed at me is marked as Exhibit 110.  A photograph of the rifle near Mr. Babb is shown on Exhibit 111.  A photograph of the Bearcat after it went through the fences is shown on Exhibit 112. A photograph of the turret with the lid up on the Bearcat in which I was standing in at the time I fired the shot is shown on Exhibit 112 and Exhibit 113.

PURSUANT TO 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED:  September 28, 2018.

*[signature]*
Will Stutesman

Page 12 – Declaration of Will Stutesman.

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DECLARATION OF WILL STUTESMAN IN SUPPORT OF FRCP 56 MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS STUTESMAN, GROSE, PIESKE, McALPINE, AND CITY OF EUGENE on Plaintiffs on Friday, September 28, 2018, by notice of electronic filing using the CM/ECF System:

Mr. Timothy R. Volpert
Email: tim@timvolperlaw.com
Tim Volpert PC
610 SW Alder Street, Suite 415
Portland, OR  97205

Mr. Andrew M. Stroth
Email: astroth@actioninjurylawgroup.com
Action Injury Law Group, LLC
191 N. Wacker Drive, Suite 2300
Chicago, IL  60606

   Attorneys for Plaintiffs

Dated:  Friday, September 28, 2018.

/s/ Robert E. Franz, Jr.
LAW OFFICE OF ROBERT E. FRANZ, JR.
Robert E. Franz, Jr.         OSB #730915
P.O. Box 62
Springfield, Oregon 97477
E-Mail:  rfranz@franzlaw.comcastbiz.net
Telephone:  (541) 741-8220
Facsimile:   (541) 741-8234
  Attorneys for Defendants
  Will Stutesman, Matthew Grose,
  Nathan Pieske, Malcolm McAlpine,
  and the City of Eugene