**Robert E. Franz, Jr.     OSB #730915**
E-Mail:  rfranz@franzlaw.comcastbiz.net
LAW OFFICE OF ROBERT E. FRANZ, JR.
P.O. Box 62
Springfield, OR  97477
Telephone:  (541) 741-8220
Facsimile:   (541) 741-8234
   Of Attorneys for Defendants Will Stutesman, Officer Grose, Officer Pieske, Sgt. McAlpine, and the City of Eugene.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **RONDA MCGOWAN**, Personal Representative for the Estate of Brian Babb, **LEE BABB, CONNOR BABB**, by and through his Guardian Ad Litem, **STEPHANIE WOODCOCK**, and **KAYLEE BABB,**<br><br>        Plaintiffs,<br><br>          vs.<br><br>**WILL STUTESMAN, OFFICER GROSE, OFFICER PIESKE, SGT. MCALPINE, CITY OF EUGENE,** a municipal subdivision of the State of Oregon, **JANE DOE CALL TAKER,** and John and Jane Does 1-10.<br><br>        Defendants. | Case No.  6:17-cv-00424-TC<br><br>**Declaration of**<br>Malcolm McAlpine |

Page 1 – Declaration of Malcolm McAlpine.

I, Malcolm McAlpine, under penalty of perjury do hereby declare as follows:

I am over the age of 18 years, and I make this declaration based on my personal knowledge of the facts contained herein.

I am one of the individually named defendants in the above-captioned case. I am currently a Sergeant in the patrol division of the Eugene Police Department, having been hired by the City of Eugene in 2004. I was promoted to Sergeant in 2011. This is the position I held on March 30, 2015.

My law enforcement career began in March 2001, at which time I was hired by the Lane County Sheriff's Office as a Corrections Officer. While at Lane County, I obtained a Basic Certificate as a Certified Corrections Officer that was issued by the Department of Public Safety Standards and Training of the State of Oregon (DPSST), after I attended the Oregon Public Safety Academy.

I then became a police officer for the City of Sweet Home in December of 2001. After I was hired by the City of Sweet Home, I again attended the Oregon Public Safety Academy and obtained a Basic Certificate as a Certified Police Officer.

After I was hired by the City of Eugene, I then obtained an Intermediate Certificate as a Certified Police Officer on March 8, 2006, from the Department of Public Safety Standards and Training of the State of Oregon. I then obtained an Advanced Certificate as a Certified Police Officer on August 4, 2009, from the Department of Public Safety Standards and Training of the State of Oregon. I obtained a Supervisory Certificate as a Certified Police Officer on September 22, 2015, from the Department of Public Safety Standards and Training of the State of Oregon.

Page 2 – Declaration of Malcolm McAlpine.

I am also a member of the Eugene Police SWAT team, which I joined in 2006. During my career with the Eugene Police Department, I have been a detective, a defensive tactics instructor, and a Field Training Officer.

In addition to the ongoing training I receive as a Police Officer, I also receive additional training as a SWAT team member. See Exhibits 102 and 115 which are true and correct copies of some of the training records showing the training I have received from the City of Eugene and the Department of Public Safety Standards and Training of the State of Oregon.

During my career with the City of Eugene, I have been very well trained as a police officer and supervisor in all areas of law enforcement, including the areas of the use of force, firearms, and defensive tactics.

The Eugene Police Department has promulgated various written policies and procedures. These procedures include the use of force. Prior to March of 2015, I had read those polices and understood them. During my time as a Police Officer and prior to March of 2015, I have received excellent training and supervision by the Eugene Police Department and the DPPST, and none of this training and supervision has been inadequate.

Attached to this motion for summary judgment is Exhibit 103. This is a true and correct copy of the recording of the information that was supplied to me and the other officers in this incident from dispatch and other radio traffic. I was able to hear the information set forth in Exhibit 103, whether it was dispatch talking or another officer talking on the radio. I relied upon the information provided to me in Exhibit 103.

I have personal knowledge of the acceptable standards and practices applicable to supervisors acting as police sergeants in Lane County and the State of Oregon and acceptable to the Department of Public Safety Standards and Training of the State of Oregon. Based upon the knowledge and experience I had as of

Page 3 – Declaration of Malcolm McAlpine.

March 30, 2015, and based upon the knowledge and experience I have of today, all of the decisions I made as a supervisor acting as a sergeant on March 30, 2015, met or exceeded the acceptable standards and practices in Lane County and the State of Oregon and were acceptable standards and practices as taught by the Department of Public Safety Standards and Training of the State of Oregon.

On March 30, 2015, me and the other responding officers were advised that Mr. Babb had "a 9-millimeter gun to his head;" he had "already shot one bullet into a window or somewhere in the house;" and that this information had been provided directly from Mr. Babb himself to his therapist. (Exhibit 103-Live Radio Dispatch) So at that point, I knew Mr. Babb was armed with a firearm, and that he was not afraid of using it. I also was aware of City Ordinance 4.885, which provided:

> "Except on established ranges, no person other than a peace officer in line of duty shall discharge a gun, including spring or air-actuated pellet gun, air gun or BB gun, or other weapon which propels a projectile by use of gunpowder or other explosive, jet, or rocket propulsion."

We then were advised that a roommate may also be in the Babb residence, and that the second pickup truck in the driveway to the Babb residence belonged to James Antonini (Exhibit 103-Live Radio Dispatch) We were further advised by dispatch that: "She is just advising that he says he has a round loaded in the chamber and that it is ready to go." (Exhibit 103)

Based upon this information and the other information set forth in Exhibit 103, I set up the location of the Bearcat in the approximate location as shown on Exhibit 105 C. It should be noted that the Bearcat was not located on the property of Brian Babb.

Once the Bearcat was stopped and in position, I then decided to have Officer Grose address Brian Babb over a loudspeaker. Officer Grose did this for several

Page 4 – Declaration of Malcolm McAlpine.

minutes; and as a result, the roommate came out of the residence with his hands empty and in the air. Portions of the statements made by Officer Grose to Mr. Babb can be heard on Exhibit 106.

By using the technique of having an officer trained in crisis and hostage negotiations, as was Officer Grose, to use a loud speaker to address Mr. Babb, we were able to get the roommate out of the house, safely, without anyone getting hurt. This technique also showed Brian Babb that all he had to do was come out of the house just like his roommate did; and if he did, everyone would be safe and secure, and that Mr. Babb would be safe and secure, and that no one would get injured.

Prior to the roommate coming out of the house, Mr. Babb opened the front door to his house, yelled at us, and then went back inside. Also, after the roommate came out of the house, Mr. Babb came to the open door, shouted at us, and closed the door. Thus, I knew that Mr. Babb could hear us and that he had heard our instructions on how to safely come out of the house. I also knew that he was not complying with our requests and directions.

Once we got the roommate back to the Bearcat, Officer Grose started calling out to Mr. Babb again. This can be heard on Exhibit 108.

I then started interviewing the roommate. At that time, he told me that as he was leaving the house, Mr. Babb was going for his guns in the gun safe, and that Mr. Babb had access to rifles. This indicated to me that Mr. Babb was getting ready to use weapons against us, and probably a rifle. Thus, at this point, I decided to keep the Bearcat in the location it was positioned as we continued to get more information from the roommate. This decision was justified, acceptable, and necessary for the safety of everyone involved, including the neighbors.

I continued to interview the roommate, and was interviewing him at the back of the Bearcat when I heard the shot go off. It took me a while to learn who had

fired the shot. Eventually, I learned that Officer Stutesman had fired the shot when Mr. Babb came to the front door of the house and pointed a rifle at him.

    PURSUANT TO 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

_____
Malcolm McAlpine

___092418_____
Dated

Page 6 – Declaration of Malcolm McAlpine.

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DECLARATION OF MALCOLM McALPINE IN SUPPORT OF FRCP 56 MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS STUTESMAN, GROSE, PIESKE, McALPINE, AND CITY OF EUGENE on Plaintiffs on Friday, September 28, 2018, by notice of electronic filing using the CM/ECF System:

Mr. Timothy R. Volpert
Email: tim@timvolperlaw.com
Tim Volpert PC
610 SW Alder Street, Suite 415
Portland, OR  97205

Mr. Andrew M. Stroth
Email: astroth@actioninjurylawgroup.com
Action Injury Law Group, LLC
191 N. Wacker Drive, Suite 2300
Chicago, IL  60606

  Attorneys for Plaintiffs

Dated:  Friday, September 28, 2018.

/s/ Robert E. Franz, Jr.
LAW OFFICE OF ROBERT E. FRANZ, JR.
Robert E. Franz, Jr.        OSB #730915
P.O. Box 62
Springfield, Oregon 97477
E-Mail: rfranz@franzlaw.comcastbiz.net
Telephone:  (541) 741-8220
Facsimile:   (541) 741-8234
  Attorneys for Defendants
  Will Stutesman, Matthew Grose,
  Nathan Pieske, Malcolm McAlpine,
  and the City of Eugene